UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff;<br><br>v.<br><br>ABRAHAM TEKLU LEMMA,<br><br>Defendant. | )<br>)<br>)<br>)<br>) Case No. 24-CR-573-JDB<br>)<br>)<br>)<br>) |

**MR. LEMMA'S MOTION TO DISMISS COUNTS ONE TO FOUR OF THE INDICTMENT ON CONSTITUTIONAL GROUNDS OR, IN THE ALTERNATIVE, TO STRIKE PREJUDICIAL SURPLUSAGE PURSUANT TO FED. R. CRIM. P. 7(d)**

Count One of the Indictment charges Abraham Teklu Lemma with Conspiracy to Communicate, Deliver, and Transmit National Defense Information to Aid a Foreign Government, specifically, the government of Ethiopia, in violation of 18 U.S.C. § 794(c). *See* Indictment [ECF Doc. No. 175] ¶¶ 1-69. Counts Two through Four charge Mr. Lemma with Attempting to and Delivering, Communicating, and Transmitting, National Defense Information to Aid the Government of Ethiopia. *Id.* ¶¶ 70-71. Mr. Lemma respectfully moves to dismiss these four counts because they are constitutionally overbroad. In the alternative, Mr. Lemma moves to strike prejudicial and nonessential surplusage from the Indictment.

## ARGUMENT

### I. COUNT ONE THROUGH FOUR OF THE INDICTMENT SHOULD BE DISMISSED BECAUSE 18 U.S.C. SECTION 794 IS UNCONSTITUTIONALLY OVERBROAD AND VAGUE

The constitutional issues raised by the overbreadth and vagueness of 18 U.S.C. § 794 are so important that Mr. Lemma's particular conduct is irrelevant to the constitutional issues raised.

Overbreadth challenges are premised on a concern that "enforcement of an overbroad law may deter or 'chill' constitutionally protected speech – especially when the overbroad statute

imposes criminal sanctions." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003). For that reason, overbreadth challenges present "an exception to the general rule against third-party standing," *Farrell v. Burke*, 449 F.3d 470, 498 (2d Cir. 2006) (Sotomayor, J.). A defendant making such a challenge "claims that[,] although a statute did not violate his or her [own] First Amendment rights, it would violate the First Amendment rights of hypothetical third parties if applied to them." *Id.* All overbreadth challenges are therefore facial challenges. *United States v. Thompson*, 896 F.3d 155, 162–63 (2d Cir. 2018) (citing *Farrell*, 449 F.3d at 498), *cert. denied*, 139 S. Ct. 2715 (2019).

As with overbreadth, Mr. Lemma's particular conduct is irrelevant to his facial vagueness challenge under the Fifth Amendment. While such challenges usually require the challenger to prove the law is vague as applied to his or her own conduct, this requirement is relaxed where, as here, the statute implicates First Amendment rights. As the Supreme Court has declared, "[a]lthough ordinarily '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others,' we have relaxed that requirement in the First Amendment context, permitting plaintiffs to argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 303 (2008); *see also Sessions v. Dimaya*, 138 S. Ct. 1204, 1250 (2018) ("This Court's precedents likewise recognize that, *outside the First Amendment context*, a challenger must prove that the statute is vague as applied to him.") (emphasis added); *United States v. Coppola*, 671 F.3d 220, 235 (2d Cir. 2012) ("Vagueness challenges to statutes *not threatening First Amendment interests* are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis.") (quoting *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988) (emphasis added)).

### A. The Indictment Should Be Dismissed Because 18 U.S.C. § 794 Is Unconstitutionally Overbroad

The First Amendment provides: "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 573 (2002). "Content-based laws – those that target speech based on its communicative content – are presumptively unconstitutional" and subject to "strict scrutiny," by which the government must prove "they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015).[1]

"Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Town of Gilbert*, 135 S. Ct. at 2227. "This commonsense meaning of the phrase 'content based' requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id.* "Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose." *Id.* "Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny." *Id.*

The Supreme Court has "also recognized a separate and additional category of laws that, though facially content neutral, will be considered content-based regulations of speech: laws that

[1] A "content-neutral" law, in contrast, is subject to lesser, but still "exacting," "intermediate scrutiny." *Citizens United v. Schneiderman*, 882 F.3d 374, 381–82 (2d Cir. 2018). Under that standard, the government must show that the law "advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests." *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 189 (1997).

cannot be justified without reference to the content of the regulated speech, or that were adopted by the government because of disagreement with the message [the speech] conveys." *Town of Gilbert*, 135 S. Ct. at 2227. "Those laws, like those that are content based on their face, must also satisfy strict scrutiny." *Id.*

A statute is overbroad and facially invalid in the First Amendment context if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010). Here, though 18 U.S.C. § 794 was intended to curb classic "spying" or traditional international "espionage" – *viz*, providing national security secrets to foreign agents with intent to harm the United States – it was written so broadly (and vaguely) as to cover substantial amounts of protected speech based on its content. This content-based restraint is therefore subject to strict scrutiny and presumptively unconstitutional. *Town of Gilbert*, 135 S. Ct. at 2226.

First, because § 794 restrict the flow of "information," it undeniably restricts "speech." The Supreme Court has held "that the creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011). "If the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category, as distinct from the category of expressive conduct." *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) (internal citations omitted).

Moreover, the Espionage Act explicitly regulates speech based on its content – the statute only punishes speech "relating to the national defense." The Supreme Court has held that "[a] speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." *Town of Gilbert,* 135 S. Ct. at 2230. Laws that "single[] out specific subject matter for differential treatment," as the Act does, are

facially content based and therefore subject to strict scrutiny. *Id.* As discussed below, Section 794 is not narrowly tailored.

### B. The Indictment Should Be Dismissed Because 18 U.S.C. § 794 Is Unconstitutionally Vague

The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The government "violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015) (citing *Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983)). In other words, a statute is unconstitutionally vague if people "of common intelligence must guess at its meaning and differ as to its application." *United States v. Lanier*, 520 U.S. 259, 266 (1997); *Giaccio v. Pennsylvania*, 382 U.S. 399, 404 (a law fails to meet due process requirements "if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits"); *Williams*, 553 U.S. at 306 ("What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is.").

Several aspects of § 794 make it unconstitutionally overbroad and vague on its face. Section 794 provides in relevant part:

> Whoever, with ***intent or reason to believe*** that it is to be used to the ***injury of*** the United States or to the ***advantage of*** a foreign nation, communicates, delivers, or 0transmits, or attempts to communicate, deliver, or transmit, to any foreign government, or to any faction or party …, either directly or indirectly, any document, writing, code book, signal book, sketch, photograph, photographic negative, blueprint, plan, map, model, note, instrument, appliance, or information **relating to the national defense**, shall be punished by death …

18 U.S.C. § 794 (emphases added). The statute does not provide definitions of the key terms and phrases bolded above – *viz*, "intent or reason to believe," "injury of," "advantage of," or "relating

to the national defense." Nor have we found any case recognizing how these vague terms – taken together, not each in isolation – serve to render the statute unconstitutionally vague. Yet, it is the compounding vagueness of each of these opaque terms that renders § 794 unconstitutionally vague as a whole.

Sections 794(a) and § 794(c) both require the prosecution to prove Mr. Lemma acted "with intent or reason to believe" that transmission of the national defense information would "injure" the United States or "advantage" Ethiopia. We have been unable to find any case that expressly considered the constitutional scope of the terms "injury" and "advantage" under Section 794, but observe that there is no requirement of materiality in the plain language of the statute,[2] and that any piece of information, no matter how petty or anodyne – for example, the name of a particular U.S. navy sailor on a particular U.S. military ship – can arguably be combined with other information to give a foreign country an "advantage" which would, in turn, "injure" the United States.

In *Gorin v. United States*, the Supreme Court held that "national defense" in § 794 of the Espionage Act "is a generic concept of broad connotations, referring to the military and naval establishments and the related activities of national preparedness," 312 U.S. 19, 28 (1941), but that the statute's scienter requirement – "with intent or reason to believe" – prevented it from being unconstitutionally overbroad. The *Gorin* Court, however, did not consider the Espionage Act's negative impact on First Amendment protections. *See, e.g., Constitutional Law—Due Process and Free Speech—District Court Holds That Recipients of Government Leaks Who Disclose*

[2] This court may not save the statute from its constitutional fate by rewriting it to include limiting terms that Congress did not enact. *See Jennings v. Rodriquez*, 138 S. Ct. 830, 843 (2018) ("Spotting a constitutional issue does not give a court the authority to rewrite a statute as it pleases."); *Crowell v. Benson*, 285 U.S. 22, 76 (1932) ("The court may not, in order to avoid holding a statute unconstitutional, engraft upon it an exception or other provision.") (Brandeis, J., dissenting).

*Information "Related to the National Defense" May Be Prosecuted Under the Espionage Act*, 120 Harv. L. Rev. 821, 823–24 (2007) (reasoning that the Espionage Act is unconstitutionally vague as applied to situations where the First Amendment is implicated); Harold Edgar & Benno C. Schmidt, Jr., *The Espionage Statutes and Publication of Defense Information*, 73 Colum. L. Rev. 929, 1000 (1973) (concluding that "the broad literal meaning of [§ 793(d) and (e)] is almost certainly unconstitutionally vague and overbroad," and that courts may have to declare them unconstitutional since neither legislative history nor the language of the statute provides authority for a particular narrow reading).[3] Nor apparently did the Supreme Court consider that with the use of the disjunctive "or," a defendant can be convicted not just for a specific "intent" but merely for having, but ignoring, a "reason to believe" – in other words, for acting negligently.

In *Unted States v. Truong Dinh Hung*, 629 F.2d 908, 918 (4th Cir. 1980), the Fourth Circuit upheld defendant's conviction against a constitutional challenge, holding that more than negligence was required to convict because the jury was instructed that the defendant must have acted "willfully." The Fourth Circuit erred. To begin, the term "willful" is found nowhere in the language of the statute. Further, its use does not cure the overbreadth and vagueness problems plaguing the statute. The Supreme Court has noted that "willfully" can have "many meanings." *Bryan v. United States*, 524 U.S. 184, 191–92 (1998); *see also* Edgar & Schmidt, *supra*, at 1038 (noting that "'Willful' is one of the law's chameleons, taking on different meanings in different contexts"). In general, "willful" means that a defendant knew his conduct was unlawful. *Bryan*, 524 U.S. at 192. But courts interpreting "willfully" in the context of § 793 do not even impose that

[3] Cases interpreting § 793 of the Espionage Act should apply to § 794, because the two provisions have similar language and purposes. Subsection 793(a) prohibits obtaining information "respecting" the national defense, with intent or reason to believe it is to be used to advantage "any" foreign nation. Subsection 794(a) prohibits transfer of information "relating" to the national defense, with intent or reason to believe it is to be used to advantage "a" foreign nation.

minimal burden, holding that, because of the "reason to believe" language, the government does not have to prove the defendant acted with the intent to harm the United States or give advantage to a foreign interest. *See, e.g., United States v. Miller*, 874 F.2d 1255, 1277–78 (9th Cir. 1989) (holding that the government does not have to demonstrate that the defendant knew he was breaking the law but instead simply that he "voluntarily and intentionally committed the acts charged"); *United States v. Morison*, 844 F.2d 1057, 1073 (4th Cir. 1988) (holding that "proof of the most laudable motives, or any motive at all, is irrelevant under the statute") (internal quotations omitted).

Even if Mr. Lemma, as a government contractor entrusted with sensitive information, had fair notice that his own alleged conduct was prohibited, the statute is still so vague and standardless that it authorizes – and may even encourage – arbitrary and discriminatory application and enforcement. Such fundamental defects, standing alone, are sufficient to require invalidating the statute.

## II. THE COURT SHOULD STRIKE ALL IMPROPER SURPLUSAGE FROM THE INDICTMENT

"Upon the defendant's motion, the court may strike surplusage from the indictment or information." Federal Rule of Criminal Procedure 7(d). Mr. Lemma so moves.

The Indictment in this case is what is commonly referred to as a "speaking indictment." That is, the government has chosen to include in it various allegations, nonessential to the Indictment's purpose, that will prejudice Mr. Lemma's defense. "Despite the all too common use of 'speaking' indictments, the function of a federal indictment is to state concisely the essential facts constituting the offense, not how the government plans to go about proving them." *United States v. Edmond*, 924 F.2d 261, 269 (D.C. Cir. 1991); Fed. R. Crim. P. 7(c)(1) (stating that the "indictment or information must be a plain, concise, and definite written statement of the essential

facts constituting the offense charged"); *United States v. Schmitz*, 634 F.3d 1247, 1261 (11th Cir. 2011) (quoting Rule 7(c)(1)). The Indictment goes beyond its basic remit, turning the Indictment into a form of closing argument meant to unfairly sway the jury members and improperly place before them allegations the government will be hard-pressed or unable to prove at trial. *See, e.g., United States v. Pendas-Martinez*, 845 F.2d 938, 941–42 (11th Cir. 1988) (error to permit government to submit case-summarizing argumentative evidence to the jury).

Attached hereto as **Exhibit A** is a copy of the Indictment with the challenged surplusage highlighted in yellow for the Court's convenience. The Court should strike it from the Indictment.

## CONCLUSION

For the foregoing reasons, the Court should (i) dismiss Count One through Four of the Indictment; (ii) in the alternative, strike the identified surplusage from the Indictment; and (iii) grant Mr. Lemma such other and further relief as the Court deems just and proper.

Dated: January 30, 2026

Respectfully Submitted,

/s/Sabrina P. Shroff
80 Broad Street, 19th Floor
New York, New York 10007
(646) 763-1490
sabrinashroff@gmail.com

*Counsel for Abraham Teklu Lemma*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on January 30, 2026, a copy of the foregoing was filed with the Clerk of the Court and served on all counsel of record by e-mail.

/s/ Sabrina P. Shroff